[No. 598.   Decided November 1, 1892.]

CHARLES MAXON, *Respondent*, v. SCHOOL DISTRICT No. 34, OF SPOKANE COUNTY, WASHINGTON, *Appellant*.

SCHOOL DISTRICTS — CHARACTER OF CORPORATION — MECHANICS'
LIENS — SCHOOL BUILDINGS — ENFORCEMENT OF CLAIM.

School districts are, within contemplation of the legislative and constitutional enactments of this state, municipal corporations; and the act of January 31, 1888, providing for liens for work done or improvements made for any "county, incorporated city or town, or other municipal corporation," authorizes the placing of liens upon school buildings.

Under the terms of § 2 of the act of January 31, 1888 (Laws 1887-8, p. 15), providing that, if a municipal corporation shall fail to take a bond from the party with whom it contracts for public work, it shall be liable to laborers and material men for the full amount of their claims, it is not necessary that the plaintiff, in an action to enforce such a claim, should have established in a prior

action the contractor's indebtedness to him, or should make the contractor a party to his action against the municipal corporation. (HOYT, J., dissents.)

*Appeal from Superior Court, Spokane County.*

*Jones, Belt & Quinn*, for appellant.

*Crow & Richardson*, for respondent.

The opinion of the court was delivered by

STILES, J.—The first point made by the appellant is, that a school district of the State of Washington is not a corporation, and cannot be sued as such. In connection with this it is claimed that no action can be brought against a school district by name, but must be brought against the directors in their representative capacity. The position is taken that there can be no corporation without express legislative enactment, and inasmuch as § 783, Gen. Stat., contains the only reference to school districts which could be taken as an attempt at a definition, it is strongly contended that the language used there does not justify the position that a school district is a corporation. The term "school district" is therein declared to mean the territory under the jurisdiction of a single school board, and all existing school districts are recognized by the act as legally organized districts. From 1877 until the passage of the act containing § 783, in March, 1890, there was no corresponding section in the laws of Washington unless the section which is found in the earlier school laws of the territory can be taken as having some continuing force, notwithstanding the language of the repealing section in the school law of 1877, and similar repealing clauses of subsequent acts.

We find in the school law of 1859 (Laws, p. 314), this provision:

"SEC. 11. When a district is organized it shall be to all intents and purposes a body corporate, capable of suing

and being sued, and fully competent to transact all business appertaining to schools or school houses in their own district; and it shall be the duty of the directors to prosecute or defend any demands for or against their district, and notice shall be served upon one of the directors of any suit brought against a district.''

The foregoing provision was contained in every school law enacted by the legislature until 1877, when for some inexplicable reason it seems to have been dropped.   But the elimination of this section from the later school laws does not, we think, conclusively show that it was the intention of the legislature either to disincorporate the old districts, or to organize new ones upon any different system from that which had been theretofore followed.   Sec. 34 of the act of 1877, after giving to the board of directors the custody of all school property belonging to the district, authorized them ''in the name of *the district*, or in their own name, as directors of the district, to convey by deed all the interest of their district in and to any school house,'' etc.   And § 39 provided that any board of directors shall be liable as directors ''*in the name of the district* for any judgment *against the district.*''   These provisions have been perpetuated in all the school laws since that of 1877. It may even be doubted whether that portion of § 11 of the act of 1859 which declares school districts to be a body corporate capable of suing and being sued has at any time been repealed.   The act of 1877 must in many respects be taken to have been a very incomplete school law if the whole of the previous acts were actually repealed by it, since so far as organization goes it entirely ignores existing districts, and provides only for the organization of new districts.   Laws 1877, § 27.   Subsequent acts until 1890 were equally deficient.   In 1886 it was provided that summons in an action against a school district should be served upon the clerk thereof, a requirement that would have been wholly illogical if the directors, and not the district, were

the defendants.   For these reasons we think that a school district is, and always has been, a corporation.

The second point made is, that a school district is not a municipal corporation.   The question here involved has been decided both ways in the various states.   Ordinarily a corporation of this limited character would probably be more strictly termed a public corporation, but under our school system, where the body of inhabitants independent of the directors are invested with certain powers in connection with the directors of the school system of the state under its laws, it would not be a strain of the term to class them as municipal corporations equally with counties. The act which we are called upon to construe is that of January 31, 1888, which reads as follows:

"Whenever the board of county commissioners of any county of this territory, or the mayor and common council of any incorporated city or town, or the tribunal transacting the business of any municipal corporation, shall contract with any person or persons to do any work of any character which, if performed for an individual, a right of lien would exist under the law, or make any improvement for such county, incorporated city or town, or other municipal corporation, such board of county commissioners, or mayor, or common council of any incorporated town, or city, or tribunal transacting the business of any other municipal corporation, shall take from the person with whom such contract is made a good and sufficient bond."

The question is, what municipal corporation did the legislature mean by this act?   It had specified counties and incorporated cities and towns, but it evidently intended to apply the law to some other corporation which it meant to include in the term "municipal corporation."   Now, at that time, there were not, either in the state or territory, any other municipal corporations unless school districts were to be taken as such.   The general idea of this law was to provide for laborers and material men some safe means of ob-

taining their just dues as against a contractor on a public work where they could in the nature of things have no lien. They could have no lien upon a school building, and yet there was likely to be more public work upon school buildings than upon any other class of corporation improvements in the state. Considering the object for which the law was passed, it would seem to have been a strange oversight if school districts had been intentionally omitted from the act.

But the constitution of 1889 seems to put it beyond doubt that school districts were regarded as municipal corporations. In several places in the constitution school districts are mentioned in connection with other municipal corporations, as in art. 7, § 2; art. 8, § 6. A large portion of art. 8 is taken up with restrictions upon municipal indebtedness. Sec. 6 mentions school districts as within the prohibitions of the article; and although § 7 provides that "no county, city, town or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company or corporation," and in that section school districts are not mentioned, there would seem to be little doubt that they should be included in its terms as municipal corporations. We, therefore, decide this point also against the appellant. *Board of Directors v. Peterson*, 4 Wash. 147 (29 Pac. Rep. 995).

In the third place appellant contends that, before the district could be sued, the indebtedness due to the respondent from the contractor must be found and established as a condition precedent to plaintiff's right to recover, and that such indebtedness could not be established in this action. Sec. 2 of the act in question, as we have interpreted it, would read that, if the school board failed to take the bond required, the district should be liable to the plaintiff for

the full amount of its debt.    There is nothing in the act which makes it incumbent upon the respondent either to have succeeded in a prior action against the contractor, or to make him a party to his action against the district.    No suit could be maintained against the district upon a judgment obtained in such an action; and it could not be used as evidence of the indebtedness.    If the contractor were made a party and should default, the district would be in no worse or better position than if he had been left out of the action.

The complaint alleged that the district, by its duly authorized directors, entered into the contract for the building of the school house.    Appellants construe this as an allegation that the directors were authorized by vote of the district to build, and claim failure of proof of the allegation, which was denied.    We think the allegation merely referred to the official character of the persons who executed the contract, and not to their special authority to build the school house.

But aside from this, the building was erected, accepted and used for school purposes long before the action was brought.    The contractor gave the respondent certain orders on the directors, one of which was paid, and the other was accepted, but not paid.    The complaint alleges these facts, and appellant claims that no recovery could be had except upon the unpaid order, because the acceptance of the order raised a new contract which wiped out the indebtedness to the contractor.    If the directors could make such a contract, we fail to see the intention to sue upon it here.    The facts concerning the orders seem to have been pleaded as some sort of an estoppel of the district to deny the amount of the debt, but the gist of the complaint was the statutory liability.

There seems to be no error, and the judgment is affirmed.

ANDERS, C. J., and SCOTT and DUNBAR, JJ., concur.

HOYT, J. (*dissenting*). — I am unable to agree with the majority of the court in the affirmance of this case.    In my opinion the district could not be held liable until there had been an adjudication of the amount of indebtedness as between the plaintiff and the contractor.    Such indebtedness could have been established in this action had such contractor been made a party thereto, but, he not having been made such party, it of course follows that there could be no adjudication as to the amount of the indebtedness as against him.

The object of the statute under which the action was brought was to furnish protection in case of work done upon public buildings similar to that afforded by our lien law when the work was done upon private buildings. There is nothing in the act which tends to show an intent upon the part of the legislature to give any more extensive rights to the claimant than is given to him under the lien law, and from the nature of the property against which claims of this kind are to be enforced and of the corporations which are the owners thereof, I not only do not see any reason for extending the remedy, but, on the contrary, I see many reasons why the same should be restricted and kept within more narrow bounds than are those which are to be enforced under the lien law.    Under that law they are to be enforced against private parties and as against property of which they are the sole owners.    Such parties are presumed to have full knowledge of contracts made by them and the work done thereunder, to a much greater extent than do the representatives of public corporations. The latter usually content themselves with seeing to the execution of the contract and pay comparatively little attention to the progress of the work thereunder.    It must follow that such public corporation has much less complete knowledge of the actions of its contractor than does a private party of one with whom he had contracted.

The entire object of the legislation as to this class of claims will be accomplished when the enforcement thereof is placed upon the same basis as the enforcement of the claim against a building owned by a private party under the lien law.   That it has always been held necessary in proceedings to foreclose a lien to have an adjudication as to the indebtedness as against the contractor, is practically conceded by the respondents and is fully established by the authorities.   See *Kerns v. Flynn*, 51 Mich. 573 (17 N. W. Rep. 62); *Vreeland v. Ellsworth*, 71 Iowa, 347 (32 N. W. Rep. 374); *Emmet & Kiefer v. Rotary Mill Co.*, 2 Minn. 286.   Such being the rule as to the enforcement of claims under the lien law, I think that at least as strict a rule should obtain in the enforcement of claims under the statute in question.   Such rule is not only a reasonable and proper one, and one which can inflict no hardship upon the claimant, but is also one which is absolutely necessary for the protection of the corporation.   As we have seen, such corporations usually know very little as to the progress of the work, or to what extent the same has been done by any claimant who may seek relief under such statute.   It follows that such claimant could meet with no successful resistance as against the enforcement of his claim, however fraudulent or excessive the same might be.

Beside, this statute is not intended for the benefit of the contractor, and he should therefore be liable to the corporation for any and all amounts which it may have to pay under the provisions thereof.   But, if the proceedings sanctioned by the majority of the court are sustained, the corporation might be compelled to pay a much larger amount than it could recover as against the contractor. The contractor, not having been a party to the proceeding, of course, would not be bound thereby, and when the corporation came to assert its rights as against such contractor, the judgment rendered in the proceeding against it would

not only not be conclusive as to the amount for which he was liable, but would not even be entitled to be introduced in evidence as against such contractor. The proper, regular course, and the only one sanctioned by such statute, would be, either to require first an adjudication of the amount due to the claimant as between him and the contractor, or else to make the contractor a party to the action against the corporation, so that he would be bound by the adjudication had therein. It follows that, in my opinion, the judgment of the lower court should be reversed.